******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBINSON, J., with whom ROGERS, C. J., and ZARE-LLA, J., join, dissenting. I respectfully disagree with part II of the majority's opinion, which concludes that the opinion letter supporting the good faith certification supplied by the plaintiff Kristin Wilkins[1] satisfied General Statutes § 52-190a (a)[2] on the ground that, under General Statutes § 52-184c,[3] a board certified obstetrician-gynecologist (obstetrician) is a "similar health care provider" to the nurse-midwives who were employed by the defendants, the Connecticut Childbirth & Women's Center, and Women's Health Associates, P.C. In my view, the majority's conclusion is contrary to the plain and unambiguous language of § 52-184c (c), and amounts to the sub silentio overruling of this court's decision in *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 12 A.3d 865 (2011). Instead, I agree with the Appellate Court that, under § 52-184c (c), the plaintiff was required instead to "submit an opinion letter authored by an individual who is trained, experienced and certified in [nurse-midwifery] or nursing" in order "to meet the requirements of § 52-190a (a)." *Wilkins* v. *Connecticut Childbirth & Women's Center*, 135 Conn. App. 679, 690, 42 A.3d 521 (2012). Because I would affirm the judgment of the Appellate Court, I respectfully dissent.[4]

I begin by noting my agreement with the facts and procedural history of this case as stated by the majority and the Appellate Court, as well as the majority's description of the parties' arguments. See id., 683–85. I also agree with the majority that, given the allegations in the plaintiff's complaint, in determining whether the opinion letter supplied by the plaintiff was authored by a similar health care provider as defined by § 52-184c, the applicable portion of that statute is subsection (c), which applies to specialists or those who hold themselves out as specialists. I part company from the majority, however, with respect to its determination that an obstetrician and a nurse-midwife are similar health care providers within the meaning of § 52-184c (c).[5]

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reason-

able interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The question of statutory interpretation presented in this case is a question of law subject to plenary review. . . .

"[I]n interpreting [statutory] language . . . we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute." (Citations omitted; internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014). Thus, in determining whether an obstetrician and a nurse-midwife are similar health care providers under § 52-184c (c), my analysis begins with a detailed review of this court's decision in *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 1, which concluded that a board certified general surgeon, with "added qualifications in [s]urgical [c]ritical [c]are, and engaged in the practice of trauma surgery" who "regularly evaluate[s] and treat[s] injured patients in the [e]mergency [d]epartment including those who are discharged from the [emergency department] as well as those who require inpatient care"; (internal quotation marks omitted) id., 8; was not statutorily permitted to author the opinion letter required by § 52-190a (a) in a medical malpractice action brought against a physician specializing in emergency medicine. Id., 4–5. This court concluded that, because "the plaintiff brought this action against the defendant in his capacity as a specialist in emergency medicine . . . § 52-190a (a) required the plaintiff to supply an opinion letter authored by a similar health care provider as defined by § 52-184c (c)." Id., 6. This court rejected the plaintiff's argument that, "to provide the opinion letter required by § 52-190a (a), a health care provider need not be a similar health care provider under § 52-184c (b) or (c) but, rather, must only qualify to testify as an expert witness under § 52-184c (d) . . . ." Id., 10; see also id., 12.

In so concluding, the court observed that § 52-190a (a) "refers to similar health care providers under § 52-184c, which utilizes that term as one of art, both to establish the standard of care that the plaintiff alleges was breached in a malpractice action; see General Statutes § 52-184c (a); as well as in part to establish a health care provider's qualifications to testify as an expert witness. See General Statutes § 52-184c (d). With respect to those health care providers who are board certified or trained and experienced as specialists, or . . . hold themselves out as specialists, a similar health care provider is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided

if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a similar health care provider." (Emphasis omitted; footnote omitted; internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 13–14, quoting General Statutes § 52-184c (c).

The court further observed that "the legislature's use of the term similar health care provider in § 52-190a, with a cross-reference to § 52-184c, is significant, because . . . had the legislature desired to broaden the pool of physicians permitted to provide an opinion letter, it could have allowed opinion letters to be authored by a *qualified health care provider*, thereby allowing either similar or nonsimilar health care providers to author opinion letters in compliance with § 52-190a (a). Rather, when establishing the guidelines for the opinion letter, the legislature clearly and unambiguously referred to a *similar health care provider*." (Emphasis added; internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 16. This court then emphasized that we "must not disturb the legislature's selection of the phrase similar health care provider and, in cases of specialists . . . conclude[d] that the author of an opinion letter pursuant to § 52-190a (a) must satisfy the definition of that term as articulated in § 52-184c (c)." Id., 17. Thus, "in cases of specialists, the author of an opinion letter pursuant to § 52-190a (a) must be a similar health care provider as that term is defined by § 52-184c (c), regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c (d)."[6] Id., 21; see also id., 23 ("we construe § 52-184c [b] as establishing the qualifications of a similar health care provider when the defendant is neither board certified nor in some way a specialist").

In light of *Bennett*, I read the "similar health care provider" requirement of §§ 52-190a (a) and 52-184c (c) to require that the author of the opinion letter hold the same board certification as the health care provider who is alleged to have been negligent, thus meaning that they share the same profession. Despite the majority's conclusion that both nurse-midwives and obstetricians practice their professions in the "same specialty," namely, obstetrics, that commonality does not render them similar health care providers as defined by § 52-184c (c). At best, it satisfies the first prong of the similar health care provider test under § 52-184c (c), namely, that they be "trained and experienced in the same specialty . . . ." General Statutes § 52-184c (c) (1). The analysis under § 52-184c (c) does not end with subdivision (1), because the test has two prongs, and § 52-184c (c) (2) expressly requires "certif[ication] by *the* appropriate American board in the *same specialty* . . . ." (Emphasis added.) This is where I believe that the

majority's analysis falters, because the " 'conjunctive "and" meaning "in addition to" is employed between the parts of the two prong test,' " meaning that " 'both tests must be met.' " *Pantlin & Chananie Development Corp.* v. *Hartford Cement & Building Supply Co.*, 196 Conn. 233, 240, 492 A.2d 159 (1985).

Examining the plain language of § 52-184c (c) (2), it is apparent that the legislature's use of the article "the," rather than the more expansive "an," in modifying the phrase "appropriate American board" demonstrates that the defendant and the opinion letter author must, in fact, be certified by the same board and, ergo, members of the same profession. See, e.g., *State* v. *Brown*, 310 Conn. 693, 704, 80 A.3d 878 (2013) ("when statutory language is framed, as a whole, in the singular, it suggests that the statute contemplates the relevant terms in the singular"). This reading is consistent with the legislature's addition of uniformity to the prelitigation requirements by eliminating the need for a subjective determination of who is qualified to author the opinion letter through the use of the statutorily defined term "similar health care provider," rather than, for example, a more expansive "qualified health care provider."[7] See, e.g., *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 21; see also footnote 6 of this dissenting opinion. Thus, I conclude that the majority's holding that a nurse-midwife and an obstetrician both "practice obstetrics" and, therefore, are similar health care providers, improperly disregards the plain and unambiguous language of § 52-184c (c), by rendering superfluous the conjunctively added subdivision (2) of the provision.

To this end, I further disagree with the majority's reliance on the Connecticut statutory scheme governing nurse-midwives in support of the proposition that "[t]he statutory requirement that a nurse-midwife work in conjunction with an obstetrician . . . combined with the explicit representation in the good faith opinion certification that the obstetrician in the present case had experience supervising nurse-midwives, demonstrates that the obstetrician satisfied the requirements for a 'similar health care provider' under § 52-184c (c)." Although there is an obvious relationship between the practices of obstetrics and nurse-midwifery, given that the statute defining the profession of nurse-midwifery requires a team oriented approach and "collaboration with qualified obstetrician-gynecologists"; General Statutes § 20-86a (1);[8] the statutory scheme nevertheless establishes nurse-midwifery as an entirely separate profession with distinct licensing and certification requirements, requiring, inter alia, the "successful completion of an educational program accredited by the American College of Nurse-Midwives" and certification "by the American College of Nurse-Midwives . . . ." General Statutes § 20-86a (2); see also General Statutes § 20-86c (licensure for nurse-midwifery requires candidate to [1] be eligible "for registered nurse licensure in this state,"

[2] "[hold] and [maintain] current certification from the American College of Nurse-Midwives," and [3] "[complete] thirty hours of education in pharmacology for nurse-midwifery"); cf. General Statutes § 20-10 (describing requirements for licensure to practice medicine and surgery under General Statutes § 20-13).[9] Indeed, in defining a nurse-midwives' scope of practice, our state statutes expressly contemplate the applicable standard of care as that "established by the American College of Nurse-Midwives." General Statutes § 20-86b.[10] Thus, although the clinical relationship between obstetricians and nurse-midwives indicates that an obstetrician might well qualify to testify as an expert witness at a trial in a case involving the alleged malpractice of a nurse-midwife; see General Statutes § 52-184c (d); our decision in *Bennett* demonstrates that that relationship nevertheless does not render them "similar health care providers" as defined by § 52-184c (c) for purposes of the opinion letter required by § 52-190a (a). See *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 21 ("in cases of specialists, the author of an opinion letter pursuant to § 52-190a [a] must be a similar health care provider as that term is defined by § 52-184c [c], regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c [d]").

Finally, given the statutory language at issue in this case and in *Bennett*, the majority's conclusion that a nurse-midwife and an obstetrician are similar health care providers overrules, sub silentio, those aspects of *Bennett* holding that, "in cases of specialists, the author of an opinion letter pursuant to § 52-190a (a) must be a similar health care provider as that term is defined by § 52-184c (c), regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c (d)."[11] Id. This, of course, is highly troubling insofar as the "doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . In assessing the force of stare decisis, our case law has emphasized that we should be especially cautious about overturning a case that concerns statutory construction."[12] (Citation omitted; internal quotation marks omitted.) *Waterbury* v. *Washington*, 260 Conn. 506, 538, 800 A.2d 1102 (2002).

I would, therefore, affirm the judgment of the Appellate Court on the basis of its conclusion that the trial court properly dismissed this action because the "plaintiff failed to submit an opinion letter authored by an individual who is trained, experienced and certified in [nurse-midwifery] or nursing," and therefore, "failed to meet the requirements of § 52-190a (a)." *Wilkins* v. *Connecticut Childbirth & Women's Center*, supra, 135 Conn. App. 690. Accordingly, I respectfully dissent.

[1] Like the majority, I note that Kristin Wilkins' husband, Billy Wilkins, filed a claim for loss of consortium. Given the derivative nature of his claim, and the fact that their claims on appeal are identical, for the sake of clarity,

I, like the majority, refer in this dissenting opinion to Kristin Wilkins as the plaintiff.

[2] General Statutes § 52-190a (a) provides in relevant part: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. *The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion.* Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . ." (Emphasis added.)

[3] General Statutes § 52-184c provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

"(b) If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

[4] I do, however, agree with the majority's conclusion in part I of its opinion that "the requirements of § 52-190a (a) apply to claims of medical malpractice brought against institutional defendants."

[5] As the majority acknowledges, the plaintiff's claims against the defendants, which are institutions, sound solely in vicarious liability for their employees' alleged negligence, and the only "employees whose actions are

specifically named in the plaintiff's complaint are certified nurse-midwives and a registered nurse." Thus, I agree with the majority that our focus in determining whether the plaintiff's opinion letter complied with § 52-190a (a) is on whether that letter is legally adequate with respect to allegations of negligence against a certified nurse-midwife or registered nurse. Cf. *Ali* v. *Community Health Care Plan, Inc.*, 261 Conn. 143, 151–53, 801 A.2d 775 (2002) (when plaintiff's theory of case against health maintenance organization was one of vicarious liability for negligence of its nurse-midwife employee, and "[t]his was not a case regarding any purported institutional negligence on the part of the defendant, nor has the plaintiff cited any evidence to support that theory," trial court properly instructed jury that relevant standard of care under § 52-184c was that of reasonably prudent nurse-midwife).

[6] In *Bennett*, the court consulted the legislative history of § 52-190a, upon deeming reasonable the plaintiff's argument "that adhering to the plain language of the statute and the narrow definition of similar health care provider yields the absurd result of potentially precluding highly qualified expert witnesses from participating in the prelitigation inquiry by authoring opinion letters." *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 17. The court concluded, however, that the relevant extratextual sources indicated "that hewing closely to the term similar health care provider, rather than expansively reading § 52-190a (a) to allow any physician who might qualify as an expert under § 52-184c (d) to author an opinion letter, best effectuates the purpose of § 52-190a (a) . . . ." Id. In observing that the legislature enacted § 52-190a intending to prevent frivolous medical malpractice actions, the court noted that the legislature had relied on testimony from an attorney representing the state medical society emphasizing "the need for an opinion from a similar health care provider prior to the commencement of a medical malpractice action, in order to 'help [e]nsure that there is a reasonable basis for filing a medical malpractice case under the circumstances and . . . eliminate some of the more questionable or meritless cases filed under the present statutory scheme.' " Id., 20.

The court further determined that, although "strictly adhering to the legislature's articulation of who is a similar health care provider may be harsh to would-be plaintiffs," it is "not absurd or unworkable. . . . Specifically, the text of the related statutes and the legislative history support the . . . determination that, unlike § 52-184c (d), which allows for some subjectivity as it gives the trial court discretion in determining whether an expert may testify, § 52-190a establishes objective criteria, not subject to the exercise of discretion, making the prelitigation requirements more definitive and uniform and, therefore, not as dependent on an attorney or self-represented party's subjective assessment of an expert's opinion and qualifications." (Citation omitted; internal quotation marks omitted.) Id., 21.

[7] Accordingly, I disagree with the majority's criticism of the defendants' interpretation of § 52-190a (a) as "impos[ing] a requirement in the statute that the opinion letter be authored by an *identical 'health care provider' and not a 'similar health care provider.'* Such a definition would frustrate the wording of the statute." (Emphasis added.)

[8] General Statutes § 20-86a (1) defines nurse-midwifery as "the management of women's health care needs, focusing particularly on family planning and gynecological needs of women, pregnancy, childbirth, the postpartum period and the care of newborns, occurring within a health care team and in collaboration with qualified obstetrician-gynecologists."

[9] General Statutes § 20-10 provides: "Except as provided in section 20-12, each person applying for a license under section 20-13 shall certify to the Department of Public Health that the applicant: (1) (A) Is a graduate of a medical school located in the United States or Canada accredited by the Liaison Committee on Medical Education or of a medical education program accredited by the American Osteopathic Association, or (B) is a graduate of a medical school located outside the United States or Canada and has received the degree of doctor of medicine, osteopathic medicine or its equivalent and satisfies educational requirements specified in regulations adopted pursuant to this chapter and has either (i) successfully completed all components of a 'fifth pathway program' conducted by an American medical school accredited by the American Medical Association or the American Osteopathic Association, or (ii) received certification from the Educational Commission for Foreign Medical Graduates; (2) has successfully completed not less than two years of progressive graduate medical training as a resident physician in a program accredited by the Accreditation Council for Graduate Medical Education, the American Osteopathic Association or an equivalent program approved by the board with the consent of the

department; and (3) has passed an examination prescribed by the department with the advice and consent of the appropriate examining board. Examinations required under this section shall be administered by the Department of Public Health under the supervision of the appropriate examining board. Passing scores shall be established by said department with the consent of the appropriate examining board. The department may, under such regulations as the Commissioner of Public Health may adopt, with the advice and assistance of the appropriate board, deny eligibility for licensure to a graduate who has been found to have provided fraudulent or inaccurate documentation regarding either the graduate's school's educational program or academic credentials or to have failed to meet educational standards as prescribed in such regulations.''

[10] General Statutes § 20-86b provides in relevant part: "Nurse-midwives shall practice within a health care system and have clinical relationships with obstetrician-gynecologists that provide for consultation, collaborative management or referral, as indicated by the health status of the patient. Nurse-midwifery care shall be consistent with the standards of care established by the American College of Nurse-Midwives. Each nurse-midwife shall provide each patient with information regarding, or referral to, other providers and services upon request of the patient or when the care required by the patient is not within the midwife's scope of practice. . . .''

[11] Although I agree with the majority that, under *Bennett*, "it is appropriate to look to the allegations of the plaintiff's complaint to frame the requirements for who constitutes a similar health care provider for purposes of the good faith opinion certification," I believe the majority extends this aspect of *Bennett* beyond its bounds in holding that the allegations contained within the plaintiff's complaint and the definition of obstetrics indicate that a board certified obstetrician is a similar health care provider for a claim involving alleged malpractice by certified nurse-midwives and a registered nurse practicing in obstetrics. In *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 23–24, this court relied on the allegations in the plaintiff's complaint to determine that the action was "brought . . . against the defendant in his capacity as a specialist in emergency medicine," in holding that subsection (c) of § 52-184c furnished the relevant definition of "similar health care provider," rather than subsection (b) of that statute. *Bennett*, however, turned on a comparison between two physicians, namely an emergency medicine specialist and a general surgeon, whereas the disparity in this case is even greater insofar as it involves a comparison between two entirely different health care professions, namely, an obstetrician and a nurse-midwife, despite the fact that both practice in the same general area of medicine.

[12] See also *Commissioner of Public Safety* v. *Freedom of Information Commission*, supra, 312 Conn. 551 n.35 ("[T]he doctrine of legislative acquiescence leaves us generally reluctant to disturb decisions interpreting statutes. . . . We are, however, more likely to reexamine a case interpreting a statute if [1] the rule to be discarded may not be reasonably supposed to have determined the conduct of the litigants, such as a criminal law or tort principle; [2] the issue presented . . . is not one that is likely to have reached the top of the legislative agenda or attract legislative sponsorship; [3] the issue is not one previously subject to extensive analysis by this court; [4] the prior interpretation has arguably led to unconscionable, anomalous or bizarre results; and [5] the legislature has been silent on the matter, as compared to cases wherein we have employed the [legislative acquiescence] doctrine not simply because of legislative inaction, but because the legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue." Citations omitted; internal quotation marks omitted.]).